UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MONTIEL, JR., | No. 2:12-cv-0446 AC P |
| Petitioner, | |
| v. | ORDER |
| F. CHAVEZ, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2009 convictions related to his possession of a destructive and explosive device (ECF No. 1). The parties have consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. Respondent has answered, ECF No. 13, and petitioner has filed a traverse, ECF No. 17.

For the reasons that follow, the petition will be denied on the merits without an evidentiary hearing.

I.     LEGAL AND FACTUAL BACKGROUND

Richard Montiel was convicted following a jury trial in the Sacramento Superior Court of recklessly possessing an explosive device in a public place and unlawfully possessing an explosive device. He was sentenced under California's Three Strikes Law to an indeterminate sentence of 25 years to life. The facts as recited by the California Court of Appeal are presumed true for purposes of this court's review under the Antiterrorism and Effective Death Penalty Act

1

of 1996 ("AEDPA"), and the petitioner does not contend otherwise. See 28 U.S.C. § 2254(e)(1).

The court of appeal found that:

> On October 10, 2007, Nora C., her daughter, and a friend were in line at McDonald's on Mack Road when they noticed a man in the line, Fernando Chavez, smelled of gasoline. From their seat in the restaurant, Nora C. and her daughter saw Chavez in the parking lot, kneeling next to an SUV and filling 40-ounce beer bottles with gasoline from a red-spouted container. Chavez handed the bottles to Fernando Nava in the SUV's front passenger seat; a third man was in the driver's seat. Chavez and Nava were ripping rags or towels and stuffing them into the gasoline-filled bottles. After seeing one of the men cover the SUV's license plate with paper, Nora C. reported the situation to the McDonald's manager, who called the police.
>
> The SUV drove to the other side of the McDonald's parking lot, where it parked near Dora B.'s car. Chavez's girlfriend was in the front passenger seat of Dora B.'s car, while the brothers Damien and Adolpho Velasquez were in the backseat. An older man was seated across from Nava in the front passenger seat of the SUV. The Velasquez brothers got into the SUV. Dora B. could smell gasoline from the SUV.
>
> Nora C. pointed out the SUV to police officers, who stopped it at the intersection of Mack Road and Franklin Boulevard. Nava was driving and defendant was in the front passenger seat; Chavez and the Velasquez brothers were in the backseat.
>
> The SUV's floorboard was saturated with gasoline. Three 40-ounce beer bottles filled with gasoline were found behind the driver's seat. Two of the bottles had cloth shoved in them; the third had a cloth or wick protruding from its neck. Styrofoam, which increases the burn time of Molotov cocktails, was found in the SUV. A cigarette lighter and a gold cap from one of the beer bottles were found on the front passenger seat, and another bottle cap was found directly below the front passenger seat.
>
> Defendant presented testimony that he was in the SUV because he needed a ride and his car was not working. The People presented a letter written by defendant while in jail awaiting trial. The letter, addressed to Chavez, indicated it was very important "that I was in the car only because I was getting a ride to my father-in-law's house" and that defendant needed Chavez to back his story.

Lodged Doc. 1 at 2-3.

Following affirmance of his convictions by the California Supreme Court, petitioner filed the instant federal action on February 21, 2012 seeking habeas relief for the same jury instructional error claim presented in his direct appeal.

////

2

II.     STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397–98; Wiggins, 539 U.S. at 526–28 & 534; Rompilla v. Beard, 545 U.S. 374, 388–909 (2005); Porter v. McCollum, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. Lockyer, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. Panetti v. Quarterman, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. Id. In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. Id. at 948.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

3

1 principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538
2 U.S. 63, 71–72 (2003). Clearly established federal law also includes "the legal principles and
3 standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002)
4 (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent
5 may constitute "clearly established Federal law," but circuit law has persuasive value regarding
6 what law is "clearly established" and what constitutes "unreasonable application" of that law.
7 Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000).

8     While not at issue in the present case, relief is also available under AEDPA where the
9 state court predicates its adjudication of a claim on an unreasonable factual determination. 28
10 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the
11 state court. Even factual determinations that are generally accorded heightened deference, such
12 as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2).
13 See, e.g., Miller–El v. Dretke, 545 U.S. 231, 240 (2005).

14     Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a
15 state prisoner's application for a writ of habeas corpus." Williams, 529 U.S. at 412. To prevail,
16 therefore, a habeas petitioner must establish the applicability of one of the § 2254(d) exceptions
17 and also must also affirmatively establish the constitutional invalidity of his custody under pre-
18 AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir.2008) (en banc). There is no single
19 prescribed order in which these two inquiries must be conducted. Id. at 736–37. The AEDPA
20 does not require the federal habeas court to adopt any one methodology. Lockyer v. Andrade,
21 538 U.S. 63, 71(2003).

22     III.    PETITIONER'S CLAIM FOR RELIEF

23     Montiel contends that his due process rights under the Fifth, Sixth, and Fourteenth
24 Amendments were violated based on the trial court's comments during voir dire concerning the
25 burden of proof and the definition of reasonable doubt.[1] Specifically, petitioner points to three

---

[1] Petitioner's second claim for relief in his 28 U.S.C § 2254 petition states that "[t]he state appellate court rendered a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court" (ECF 1 at (continued…)

4

particular portions of the trial court's comments during voir dire that allegedly reduced the prosecutor's burden of proof.

First, the trial court compared the elements of a criminal charge to the building blocks of a house.

> Elements, if you will, are like building blocks. It's like building a house. You have to have a foundation, walls, and a roof. If you don't have a roof, you don't have a house, under my example. If you don't have a foundation, you don't have a house. You have to have all of the elements in order to call it a house. If the front door is kicked open or a window is broken, it may be a house, a damaged house, but so long as it has, under my example, the foundation, walls, and a roof, it is still a house. The point being that the district attorney has to prove each of the elements… and the People have to prove them beyond a reasonable doubt.

A.R.T. 16.[2] Petitioner argues that this example could have been construed by the jury as indicating that damaged evidence, like a damaged house, was legally sufficient to convict, and it was therefore misleading and confusing. ECF 1 at 57.

The trial court also used the 1969 moon landing to illustrate the concept of reasonable doubt.

> [W]hat they are talking about is everything we do relating to human affairs is open to some possible or imaginary doubt. … [A]n example that I have been giving for much of my career… [is the belief] that we didn't land a man on the moon. That was all done with smoke and mirrors in Hollywood to trick us all for some reason, and is that possible? Sure. But the question is is it reasonable? And that's a little bit like a criminal case.

A.R.T. 63. Petitioner asserts that this comment, which "spoke of possible or imaginary doubt as not being reasonable," lowered the prosecution's burden of proof in this case. ECF 1 at 43.

Lastly, the trial court attempted to compare making a decision in a criminal case to making a medical decision in one's personal life:

> I'll give you an example about what the law is talking about. You or someone close to you is very ill, maybe needs surgery or needs

---

4). This is merely a recapitulation of the AEDPA standard for relief to be granted on a claim that was reviewed on the merits by a state court. See 28 U.S.C. § 2254(d)(1). As such, it will not be addressed separately.

[2] "A.R.T." refers to the Augmented Reporter's Transcript lodged by the Respondent.

5

>some sort of medical procedure. You see one doctor. You may even get the opinion of another doctor. You have to make a decision whether to live with the illness, or the child or the young one has to live with the illness or take the risk of the medical procedure that the doctor, he or she, is prescribing. You can have some doubt, but you make those kinds of decisions in your personal lives, and that is a little bit like a criminal case. You can have some doubt and render a decision for the prosecution, but the question is is it a reasonable doubt.

A.R.T. 64. According to the petitioner, this reference to decision-making in one's daily life effectively reduced the burden of proof required to convict him.

The due process clause requires a trial court to instruct the jury that the prosecution bears the burden of proving the defendant's guilt beyond a reasonable doubt. See Victor v. Nebraska, 511 U.S. 1, 5 (1994); In re Winship, 397 U.S. 358, 364 (1970). However, the United States Supreme Court has never required "any particular form of words be used in advising the jury of the government's burden of proof." Victor, 511 U.S. at 5. "[T]aken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140 (1954).

Petitioner does not dispute that the jury was accurately instructed on the prosecution's burden of proof and the reasonable doubt standard. See CALCRIM No. 220.[3] Instead, he argues

---

[3] The trial court instructed the jury as follows:

>A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.
>
>Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
>
>In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

1 C.T. 260.

6

that this instruction was in essence tainted by the judge's comments nine days earlier during voir dire.  The standard jury instruction given in this case "embodies two interrelated principles, namely, the defendant's presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt."  People v. Aranda, 55 Cal.4th 342, 355 (2012).

Petitioner argues that he is entitled to reversal per se under Sullivan v. Louisiana, 508 U.S. 275 (1993), based on the trial court's alleged structural error.  In the alternative, he contends that the error is harmful beyond a reasonable doubt under the standard articulated in Chapman v. California, 386 U.S. 18 (1967).  ECF 1 at 50-51.  The alleged instructional error did not "categorically vitiate all the jury's findings" in this case, because the jury was given a correct instruction on reasonable doubt prior to deliberating.  Therefore, harmless error analysis applies.  See Hedgpeth v. Pulido, 555 U.S. 57 (2008).  In the habeas context, an error is deemed harmful if it had a "substantial and injurious effect or influence" on the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  However, the AEDPA requires an additional layer of review prior to any independent harmless error analysis can be conducted by this court.  "To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error."  Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005).

The California Court of Appeal decision, Lodged Doc. 1, constitutes the last reasoned decision on the merits of petitioner's due process challenge in this case because the state supreme court denied discretionary review.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991).  Accordingly, it forms the basis of this court's AEDPA review for reasonableness.  See 28 U.S.C. § 2254(d).  Because the appellate court adjudicated the claim in a reasoned opinion, review under § 2254(d) is confined to "the state court's actual reasoning" and "actual analysis."  Frantz, 533 F.3d at 738.

The California Court of Appeal first rejected petitioner's challenge to the trial court's comparison of the elements of the offense to the building blocks of a house.  "The building blocks simile accurately reflected that the People must prove each element of the crime" and it "did not

1  misstate the burden of proof." Lodged Doc. 1 at 8. While conceding that "on close inspection"
2  the trial court's statement "may technically be correct if strictly limited to the facts given in the
3  example," the petitioner hypothesizes that this example may have confused the jury. ECF 17 at 7.
4  However, there is nothing in the record to support such speculation. Rank conjecture regarding
5  jury confusion does not demonstrate that the state court unreasonably applied clearly established
6  federal law in denying the claim. See 28 U.S.C. § 2254(d)(1).

7        With respect to the judge's attempt to further define reasonable doubt by using the 1969
8  moon landing, the Court of Appeal emphasized that such attempts always run the risk of being
9  more confusing than clarifying to the jury. Id. at 10. While petitioner makes much of the Court
10 of Appeal's description of the moon landing example as "risky business," this was more of a
11 general observation than a pointed condemnation of the trial court's statement. Id. at 9-10 (citing
12 Miles v. United States, 103 U.S. 304, 312 (1881) (stating that "[a]ttempts to explain the term
13 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury.").
14 Despite its recognition that the moon landing analogy was less than helpful, the state court of
15 appeal found that the trial court's example did not reduce the prosecution's burden of proof in
16 light of the jury instructions taken as a whole. See Lodged Doc. 1 at 10. This finding was not
17 unreasonable. The constitutional question is whether there is a reasonable likelihood that the jury
18 understood the instructions to allow conviction based upon proof insufficient to meet the Winship
19 standard. Victor, 511 U.S. at 5–6 ("[T]he proper inquiry is not whether the instruction 'could
20 have' been applied in an unconstitutional manner, but whether there was a reasonable likelihood
21 that the jury did so apply it.") Since the jury was properly instructed on the correct burden of
22 proof immediately prior to deliberating, it is not reasonably likely that the jury would have relied
23 upon an example provided nine days earlier by the trial court to apply a contrary standard of
24 proof. See Richardson v. Marsh, 481 U.S. 200, 211 (1987) (stating that a jury is presumed to
25 follow its instructions). As a result, the state court of appeal did not unreasonably apply Supreme
26 Court jurisprudence in rejecting this claim.

27       The state court also rejected petitioner's challenge to the third portion of the trial judge's
28 comments, concerning the doubt that exists when making a medical decision for oneself or a

1  child.  The California Court of Appeal found this discussion to constitute error, because decisions
2  "in the ordinary affairs of life" are more akin to the preponderance of the evidence standard.  See
3  Lodged Doc. 1 at 10-11.  However, the court of appeal ultimately concluded that such error was
4  harmless because "it was not reasonably likely that the comments… led the jury to apply an
5  incorrect standard of proof."  Id. at 13.  The court's analysis focused on the passage of time
6  between the erroneous voir dire comments and the jury's actual deliberation as well as the fact
7  that the jury was accurately instructed on the burden of proof and reasonable doubt.  Id. at 13-14.
8  In so reasoning, the state court applied the correct legal standard and reviewed the trial judge's
9  comments in the context of the jury instructions as a whole.  Without any error in the final
10 instructions, and in light of the fact that the trial judge qualified his comments by stating that
11 medical decisions are only "a little bit like a criminal case," it simply cannot be said that the state
12 court's harmless error analysis was contrary to clearly established federal law or objectively
13 unreasonable.  See 1 R.T. at 64.  See Mitchell v. Esparza, 540 U.S. 12 (2003).

14       For all the reasons explained above, the state court's denial of petitioner's claims was not
15 contrary to nor an unreasonable application of clearly established Supreme Court precedent.

16       IV.     CERTIFICATE OF APPEALABILITY

17       Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States
18 District Courts, "[t]he district court must issue or a deny a certificate of appealability when it
19 enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A certificate of
20 appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial
21 showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either
22 issue a certificate of appealability indicating which issues satisfy the required showing or must
23 state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).  For the reasons
24 set forth herein, petitioner has not made a substantial showing of the denial of a constitutional
25 right.  Therefore, no certificate of appealability should issue.

26       Accordingly, IT IS HEREBY ORDERED that:
27       1. The petition for writ of habeas corpus is denied; and
28 ////

2. This court declines to issue a certificate of appealability.

DATED: October 9, 2013

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:ts/mont0446.finalorder

10